**SIGNED THIS: June 7, 2018**

_(signature)_

_____

**Mary P. Gorman**
**United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 14-71512 |
| KENT E. DELAY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| RYAN BANDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-07040 |
| | ) | |
| KENT E. DELAY, DAVID REID, | ) | |
| MARIANN POGGE, and RANDALL | ) | |
| STIEREN, | ) | |
| | ) | |
| Defendants. | ) | |

# **O P I N I O N**

Before the Court is a Motion for Stay Pending Appeal (#165) and a Motion to Amend Motion for Stay Pending Appeal (#199) filed by Defendant, Kent E. DeLay. For the reasons set forth below, the Motion to Amend will be granted, and the Motion for Stay, as amended, will be granted.

## I. Factual and Procedural Background

Kent E. DeLay has appealed from an Opinion and Order entered by this Court on March 29, 2018. The appeal is pending before the District Court of the Central District of Illinois. Mr. DeLay has also filed a motion seeking a stay pending the appeal to prevent the Plaintiff, Ryan Bandy, from enforcing the Order and to prohibit the case trustee, Mariann Pogge, from selling estate assets as contemplated by the Order. In his motion, Mr. DeLay seeks a complete stay of the Order but offers no bond to protect the interests of the parties against whom he seeks the stay.

The facts relating to the underlying dispute between Mr. Bandy and Mr. DeLay and their litigation before this Court are set forth in detail in *Bandy v. DeLay (In re DeLay)*, 2018 WL 1596883, at *1-11 (Bankr. C.D. Ill. Mar. 29, 2018). Accordingly, those facts will only be briefly summarized here.[1]

Mr. Bandy, Mr. DeLay, and Randall Stieren created RKR Clubs, LLC ("RKR Clubs") for the purpose of operating a bar in Springfield, Illinois. In 2010, they

---

[1] To the extent the facts summarized herein differ in any way from the facts set forth in the March 29th Opinion, the facts in the Opinion control and are this Court's actual finding of facts. Fed. R. Bankr. P. 7052.

entered into a Purchase Agreement whereby Mr. Bandy bought the interests of Mr. DeLay and Mr. Stieren in RKR Clubs for $20,000 and other consideration, but Mr. DeLay and Mr. Stieren retained an option to buy back their interests upon similar terms. The reason for the transaction was that Mr. DeLay and Mr. Stieren owed taxes to the State of Illinois and therefore could not qualify to hold the liquor license necessary for the bar's operation. In 2013, Mr. Bandy filed a complaint for declaratory judgment in the Circuit Court of Sangamon County, Illinois, claiming that he had completed all of his obligations under the Purchase Agreement and under a separate agreement whereby he had assumed an obligation of Mr. DeLay and Mr. Stieren to James Kuizin related to funds borrowed for their initial acquisition of their interests in RKR Clubs. He requested that he be declared the owner of RKR Clubs and that the state court fix the amount still due from him to Mr. DeLay and Mr. Stieren pursuant to their agreements. Mr. DeLay and Mr. Stieren counterclaimed that they had timely exercised their option to repurchase their interests in RKR Clubs and that those interests should be awarded to them. They also asked the state court to determine the amounts they owed to Mr. Bandy to finalize the exercise of their repurchase option.

On August 20, 2014, while the state court litigation was pending and without advance notice to his state court attorney, David Reid, Mr. DeLay filed his Chapter 7 bankruptcy. On his bankruptcy schedules, Mr. DeLay listed Mr. Bandy as a creditor but scheduled his address as "c/o David Reid" at Mr. Reid's office address, even though he knew that Mr. Reid did not represent Mr. Bandy. Mr. Reid, through his secretary, requested Mr. DeLay to correct Mr. Bandy's address on his bankruptcy paperwork, but Mr. DeLay did not do so. Neither Mr. DeLay nor

Mr. Reid ever notified Mr. Bandy, Mr. Bandy's attorney, David Hall, or the state court of Mr. DeLay's bankruptcy filing.

Notwithstanding Mr. DeLay's bankruptcy, he and Mr. Reid continued prosecuting the state court action without obtaining relief from stay or asking this Court to abstain with respect to its exclusive jurisdiction over the property of Mr. DeLay. Ms. Pogge apparently acquiesced in Mr. Reid's continuance of the litigation after the bankruptcy filing but has since admitted that, when she did so, she had not thought through the issues of stay relief, subject matter jurisdiction, and standing. Ms. Pogge also had no knowledge of and played no role in the failure to give notice of the bankruptcy filing to Mr. Bandy, Mr. DeLay's misdirection of Mr. Bandy's notices to Mr. Reid, or Mr. Reid's failure to disclose the bankruptcy filing to the state court.

On March 23, 2015, the state court entered summary judgment in favor of Mr. DeLay and Mr. Stieren and against Mr. Bandy. The state court ordered Mr. Bandy to transfer Mr. DeLay's and Mr. Stieren's ownership interests in RKR Clubs to them and ordered Mr. DeLay and Mr. Stieren to reimburse Mr. Bandy for the payments he had made on their obligation to James Kuizin. The Fourth District Appellate Court of Illinois subsequently affirmed the summary judgment. *Bandy v. DeLay*, 2016 IL App (4th) 150677-U.

After receiving the decision from the Illinois Appellate Court, Mr. Bandy instructed Mr. Hall to notify Mr.Reid that he was willing to promptly turnover Mr. DeLay's and Mr. Stieren's interests in RKR Clubs to them. His offer would have restored Mr. DeLay and Mr. Stieren to the control of the day-to-day operations of the bar because their combined interests represented 70% ownership of RKR

Clubs. Mr. Bandy also began notifying employees and patrons of the bar of the anticipated changes. During a conversation with a bar patron, he learned that Mr. DeLay had filed bankruptcy while the state court litigation was ongoing. He notified Mr. Hall, who then researched the issue and discovered that not only had Mr. DeLay filed bankruptcy but Mr. Reid had been receiving the bankruptcy notices intended for Mr. Bandy without ever having turned them over to Mr. Hall or Mr. Bandy. Mr. Hall also received a response from Mr. Reid regarding Mr. Bandy's willingness to turn over the bar to Mr. DeLay and Mr. Stieren wherein Mr. Reid indicated that Mr. Bandy's offer was declined and the litigation would continue with Mr. DeLay and Mr. Stieren seeking damages.

After learning of the bankruptcy case, Mr. Hall contacted Ms. Pogge and offered $10,000 from Mr. Bandy to purchase Mr. DeLays's interest in RKR Clubs. Ms. Pogge then gave Mr. DeLay an opportunity to bid, and he offered $15,000. Because that amount appeared, at the time, to be enough to pay all timely filed claims in full, Ms. Pogge accepted Mr. DeLay's bid and filed a motion seeking authority to compromise with Mr. DeLay.[2] Mr. Bandy objected, raising his lack of notice and lost opportunity to bid years earlier. After a hearing wherein this Court expressed serious concern about how the case had been administered, the motion to compromise was put on hold.

Mr. Bandy, represented by Attorney Kevin Linder, then filed this adversary

---

[2] Claims on file at the time totaled about $9000. Ms. Pogge was not aware that Mr. Bandy also had a claim for at least $8000 for reimbursement regarding the James Kuizin note. Because Mr. Bandy had not received timely notice of the initial filing and claims bar date, he was entitled to file a late claim that would share equally with timely filed claims and later did so. 11 U.S.C. §726(a)(2)(C). Mr. DeLay was aware of Mr. Bandy's potential claim, however, and knew when he offered $15,000 that it would not be enough to pay all claims in full once Mr. Bandy filed his claim.

proceeding seeking relief against Mr. DeLay for the stay violations. After several motions to dismiss, Mr. Bandy filed his second amended complaint, which sought relief principally against Mr. DeLay in Counts I and II and against Mr. Reid in Counts IV and V for alleged violations of the automatic stay. Count III of the second amended complaint sought relief against Ms. Pogge but was dismissed for failure to state a claim upon which relief could be granted. Count II also sought relief against Mr. Stieren, and Ms. Pogge intervened as a party defendant to Count II because the relief sought involved the validity of the previously entered state court judgment.

The case was tried on December 19, 2017; closing arguments were heard December 20, 2017. On March 29, 2018, this Court entered its Opinion and Order on the second amended complaint. In the Opinion, this Court found that Mr. DeLay and Mr. Reid had wilfully violated the automatic stay and had prosecuted the state court action after Mr. DeLay had lost standing and the state court had been divested of its subject matter jurisdiction by the bankruptcy filing. As to Count I, Mr. Bandy was awarded compensatory and punitive damages. He was awarded the opportunity to match Mr. DeLay's bid of $15,000 for Mr. DeLay's interest in RKR Clubs on the condition that he agreed to subordinate his claim so that other creditors would be paid in full ahead of him. He was also awarded compensatory damages of $5000 and punitive damages of $10,000. Mr. DeLay was ordered to facilitate the turnover of the $15,000 he had on deposit with Ms. Pogge to pay the money judgments entered in Mr. Bandy's favor. In making these monetary awards, the Court specifically noted that, although he had claimed to be entitled to significantly more money damages, Mr. Bandy's case suffered from

a lack of proof on the issue.

As to Count II, the state court judgment entered in favor of Mr. DeLay and against Mr. Bandy was declared void as having been entered in violation of the stay, after the state court lost subject matter jurisdiction, and after Mr. DeLay had lost standing to prosecute the case. Judgment was, however, entered in favor of Mr. Stieren as to Count II as Mr. Bandy failed to present any evidence or legal argument as to why the judgment entered in favor of Mr. Stieren should be declared void. As to Counts IV and V, this Court found that Mr. Reid had wilfully violated the stay and breached his ethical obligations when he failed to notify Mr. Bandy, Mr. Hall, and the state court of the bankruptcy filing. But, because Mr. Bandy failed to prove that any additional monetary damages should be awarded, no judgment for damages was entered against Mr. Reid.

On April 9, 2018, Mr. Bandy filed a motion to reconsider alleging that this Court erred in its Opinion and Order by not entering judgment against Mr. Reid related to a $10,000 payment made to him by Mr. Stieren for attorney fees, which Mr. Bandy claimed was preferential. Mr. Bandy also asserted that he was entitled to a further hearing on the issue of fees based on a fee-shifting provision in the agreement regarding his assumption of the James Kuizin note. Hearing on the motion to reconsider was held on April 24, 2018.

At the hearing, Mr. Linder was unable to explain how this Court could have considered entering a judgment recovering a preferential payment from Mr. Reid when no count in the second amended complaint sought such relief and when, in any event, such a cause of action would have belonged to the trustee—not Mr. Bandy. He was also unable to explain his theory of why the payment might have

been preferential when all of the evidence about the payment indicated that it was made by Mr. Stieren rather than by Mr. DeLay and when the payment was unquestionably made after the bankruptcy was filed and not during the statutorily-defined preference period. *See* 11 U.S.C. §547. Mr. Linder was also unable to explain why the Court would look to the fee-shifting provisions of the agreement related to the James Kuizin note to award fees when that agreement was not the subject of any of the counts in the second amended complaint and when this Court had expressly stated in its Opinion that it was not revisiting the merits of the underlying dispute between the parties. The relief granted by the Opinion and Order was based solely on the bankruptcy causes of action related to the stay violations. Mr. Linder was admonished at the conclusion of the hearing that the motion to reconsider was so devoid of factual and legal support that its filing was likely sanctionable.

In the meantime, Mr. DeLay also filed a number of motions and documents.[3] One motion, filed April 18, 2018, asked for an extension of time to file a notice of appeal. At the April 24th hearing, that motion was denied as unnecessary because Mr. Bandy's motion to reconsider stopped the original deadline from running, and the denial of the motion to reconsider on April 24th extended the deadline for filing a notice of appeal to May 8, 2018.

On May 8, 2018, Attorney Jeana Reinbold entered an appearance in this proceeding for Mr. DeLay and filed a notice of appeal on his behalf. The notice of

---

[3] Mr. DeLay was represented in his original bankruptcy filing by Ostling & Associates. Attorney Michael Logan represented Mr. DeLay in this adversary case through the trial in December 2017. Mr. Logan passed away on February 7, 2018, and Mr. DeLay was therefore acting *pro se* at the time.

appeal said that it related to the judgments entered on Counts I and II only. Attorney Reinbold also filed a motion seeking a stay of the judgment against Mr. DeLay pending the outcome of the appeal. In his motion seeking the stay, Mr. DeLay asserted that the Court's Order entered March 29, 2018, impaired an exemption of $2384.15 he had claimed in his interest in the state court litigation involving RKR Clubs. He also asserted that Ms. Pogge was obligated to try to maximize the proceeds from the sale of estate assets in order to create a surplus estate for his benefit. The motion acknowledged Mr. DeLay's burden to establish a likelihood of success on the merits of his appeal in order to obtain a stay.

An initial hearing on Mr. DeLay's motion seeking a stay pending appeal was held on May 15, 2018. At the hearing, Attorney Reinbold was unable to explain how the Court's Order impaired Mr. DeLay's exemption. Ms. Pogge stated that the $15,000 in proceeds she expected to receive from Mr. Bandy for the purchase of the assets would be sufficient to pay Mr. DeLay's exemption, administrative expenses, and all claims—except Mr. Bandy's—in full. As Mr. Bandy had already indicated a willingness to subordinate his claim, Ms. Pogge saw no issue with paying Mr. DeLay's exemption.[4] Attorney Reinbold stated that she had conferred with Ms. Pogge before the hearing but could not explain why, despite Ms. Pogge's assurances, she persisted in the claim that Mr. DeLay's exemption was impaired. Attorney Reinbold also was unable to point to any language in either the Opinion or Order that she claimed actually impaired the exemption. She admitted that she might be confusing the $15,000 Mr. DeLay has on deposit with Ms. Pogge, in

---

[4] In a response to the motion to stay, Mr. Bandy also acknowledged that Mr. DeLay was entitled to his claim of exemption and saw no issue with the exemption being paid from sale proceeds.

which he can claim no exemption, with the final sale proceeds that will be used, in part, to pay his exemption.

At the hearing, Ms. Reinbold also acknowledged that Mr. DeLay had the burden of establishing that there was a reasonable possibility that the assets being sold by the trustee could be sold for enough to create a surplus estate. Ms. Reinbold had no evidence to present on that point. Instead, she asserted that she was simply trying to preserve the possibility for her client. The Court suggested that the amount necessary to pay all claims and expenses, including an estimated claim of Mr. Bandy, would be almost $35,000. The Court also expressed concern that, unless Mr. DeLay was willing to post that much as a bond to guaranty his future purchase of the assets, it was likely that, even if he prevailed on appeal, the matter would come back to this Court only to have the assets sold for the same $15,000 already available. Ms. Reinbold requested time to discuss the posting of a bond with her client, and the matter was continued for further hearing on May 24, 2018.

At the hearing on May 24th, Ms. Reinbold acknowledged the Court's authority to require a bond in order for Mr. DeLay to obtain a stay pending appeal. She reported, however, that Mr. DeLay was unable to post the bond as set by the Court. Nevertheless, she noted that, since the last hearing, Mr. Bandy had filed a notice of cross-appeal, and she asserted that there was a significant body of case law suggesting that, when a prevailing party appeals, enforcement of the judgment may be stayed without the posting of a bond. She asked the Court to clarify that Mr. Bandy's appeal effectively stayed the sale of estate assets. Ms. Pogge joined Ms. Reinbold's argument, asserting that she believed that, even if Mr. Bandy was

seeking only a review of the monetary awards, the judgment was not severable. She said that she believed she could not go forward with the sale of estate assets to Mr. Bandy while his appeal was pending.

Mr. Bandy was represented at the hearing by both Attorney Linder and Attorney James Pappas.[5] Mr. Pappas acknowledged that Mr. Bandy had filed a cross-appeal and that the notice said that he was appealing from the Opinion and Order entered March 29, 2018, and from the denial of his motion to reconsider. He said, however, that Mr. Bandy was really only appealing the issues set forth in his motion to reconsider. When pressed first about how Mr. Bandy could possibly continue his argument that the Court erred in not ordering the recovery of a $10,000 preference from Mr. Reid when no such relief was requested in the complaint and when it was undisputed that the transfer to Reid was made after the case filing, Mr. Pappas said that Mr. Bandy was really only appealing the issues regarding the award of fees. Mr. Pappas asserted, without citation to any authority, that this Court had discretion to reopen the proofs to allow Mr. Bandy to present evidence of the attorney fees he had incurred as a result of the stay violations, even though he failed to present the evidence at trial. Implicit in Mr. Pappas' argument was an assertion that this Court abused its discretion by not allowing Mr. Bandy and Mr. Linder to correct the mistakes they made at trial.

Although Mr. Pappas affirmatively asserted that he knew exactly what he was doing when he filed the notice of cross-appeal, he appeared to be caught off

---

[5] Attorney Pappas entered his appearance in this case on behalf of Mr. Bandy on May 13, 2018. Mr. Linder has not withdrawn from representing Mr. Bandy. Both attorneys appeared for Mr. Bandy at the May 15th and May 24th hearings. Mr. Pappas filed the notice of cross-appeal on behalf of Mr. Bandy.

guard by the arguments of Ms. Reinbold and Ms. Pogge that Mr. Bandy's cross-appeal could result in the judgment being stayed without the posting of a bond by Mr. DeLay. Mr. Bandy, who was seated in the gallery during the hearing, also appeared not to have been advised of that possible result, as he began waving his hands and shouting out that he wanted to dismiss his cross-appeal. Mr. Pappas provided no cogent argument why the filing of the cross-appeal did not result in the judgment being stayed.

At the conclusion of the hearing, the motion for stay pending appeal was taken under advisement. On May 29, 2018, just five days after the hearing and while the Court was considering the matter, Mr. DeLay filed a motion to amend his motion for stay pending appeal. In his motion to amend, Mr. DeLay represented that he no longer intends to raise any issue regarding the impairment of his exemption on appeal. Mr. DeLay also formally asked the Court to consider the argument made at the May 24th hearing that Mr. Bandy's cross-appeal resulted in the judgment being stayed without the posting of a bond.

Mr. Bandy filed his response to the motion to amend on June 1, 2018. The response raised no defenses to the relief requested in the motion to amend. Rather, the response simply admitted or denied the various allegations of the motion to amend and directed the Court to its own Opinion in the case. Although the response requested that the motion to amend be denied, it provided no legal support for that request. The matter was again taken under advisement.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C.

§1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). A motion for stay pending appeal involves the administration of the estate and is a core proceeding. 28 U.S.C. §157(b)(2)(A); *In re Quade*, 496 B.R. 520, 523 (Bankr. N.D. Ill. 2013). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

A stay pending appeal may be granted upon the motion of an appellant and generally may be conditioned upon the filing of a bond approved by the court. Fed. R. Bankr. P. 7062(d), 8007. Case law suggests that, in determining whether to grant a stay, a court should consider: (1) whether there is a likelihood of success on the merits of the appeal; (2) whether the movant will suffer irreparable harm absent a stay; (3) whether a stay would substantially harm other parties; and (4) whether a stay is in the public interest. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997); *In re Olde Prairie Block Owner, LLC*, 447 B.R. 578, 579 (Bankr. N.D. Ill. 2011). Granting a stay pending appeal is "an exceptional form of relief and requires a considerable showing from the movant." *Quade*, 496 B.R. at 526.

To prevail on the first required element, Mr. DeLay must establish a likelihood of success on the merits of his appeal. He must do more than simply allege that he has grounds for an appeal. *See Forty-Eight Installations*, 115 F.3d at 1300-01. Rather, he must identify particular mistakes of law or fact upon which

there is a likelihood of reversal. *See Olde Prairie Block Owner*, 447 B.R. at 579-80.

In his motion for stay pending appeal, Mr. DeLay identified two grounds for his appeal upon which he says he has a likelihood of success. First, he said that he intended to appeal this Court's Order impairing the exemption he had claimed in the proceeds from his dispute with Mr. Bandy over RKR Clubs. He now requests to withdraw that assertion, and the withdrawal will be allowed. As previously stated, this Court has entered no orders impairing Mr. DeLay's claim of exemption, and, accordingly, there was no likelihood he would be successful in obtaining the reversal of a non-existent order.

Second, Mr. DeLay claims that Ms. Pogge has a duty to maximize the proceeds from the sale of estate assets to create a surplus estate for his benefit. He says that this Court's Order granting Mr. Bandy the right to match his $15,000 offer to purchase and directing Ms. Pogge to sell the estate assets to Mr. Bandy if he matches the offer conflicts with Ms. Pogge's duty to seek higher offers. Mr. DeLay presented little in his motion for stay or at the hearings on his motion to suggest that he has a likelihood of success on the merits of this issue. He misstated the law regarding Ms. Pogge's duty to maximize proceeds and presented no factual argument to support his claim that the estate assets might realistically be sold for enough to create a surplus.

A Chapter 7 trustee has a duty to "collect and reduce to money the property of the estate" and is directed to act "as expeditiously as is compatible with the best interests of the parties in interest[.]" 11 U.S.C. §704(a)(1). A debtor is a party in interest in his or her own case, but nothing in the Code specifically requires a trustee to try to create a surplus estate or to place the interests of a debtor ahead

-14-

of the interests of the creditors when selling assets. To the contrary, the general rule is that Chapter 7 debtors do not even have standing to object to the entry of orders allowing trustee motions to sell estate assets because such debtors do not have a pecuniary interest in the sale proceeds. *See In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 692 (7th Cir. 1992). The exception to the general rule occurs only when the value of the assets to be sold is more than sufficient to satisfy all claims so that it is likely that surplus proceeds will be available for distribution to the debtor. *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 608 (7th Cir. 1998); *see In re Andreuccetti*, 975 F.2d 413, 416-17 (7th Cir. 1992). Thus, Mr. DeLay is incorrect in suggesting that Ms. Pogge owed him a duty to maximize the proceeds from her sale of estate assets. *Peyton v. Keefe (In re Keefe)*, 2010 WL 1417796, at *4 (Bankr. E.D. Va. Apr. 2, 2010) ("[T]he interest of creditors in being paid predominates over the debtor's interest in receiving a surplus."). Rather, the case law makes it clear that Mr. DeLay has the burden of showing that the estate assets have surplus value, and that showing is a pre-condition to him even having standing to object to the sale of the estate assets or to appeal this Court's Order regarding the sale. *See Andreuccetti*, 975 F.2d at 417. Further, Mr. DeLay's burden is to show a reasonable possibility of such a surplus, not just the theoretical chance of a surplus. *In re Carl F. Semrau*, 2005 WL 3242332, at *6 (Bankr. N.D. Ill. Dec. 1, 2005) (citing *Andreuccetti*, 975 F.2d at 417).

Mr. DeLay offered no facts in support of his claim that the value of estate assets here is reasonably likely to create a surplus. At the hearing on May 15th, Attorney Reinbold simply stated that she was trying to preserve the issue for her client. She argued that what she claimed was a lack of evidence at trial regarding

the value of the estate assets should work in her client's favor and serve as a basis to reverse this Court's Order regarding the sale to Mr. Bandy. But that position ignores the fact that it is Mr. DeLay who has the burden to show the reasonable prospect of a surplus estate, as well as the fact that significant evidence of the limited value of the estate assets was presented during the trial in December 2017.

The assets Ms. Pogge has to sell consist of Mr. DeLay's rights under the Purchase Agreement related to his 36% interest in RKR Clubs. Mr. Stieren owns a 34% in RKR Clubs; Mr. Bandy owns a 30% interest.[6] The three owners have been involved in litigation since 2013, and, regardless of how and to whom Ms. Pogge sells Mr. DeLay's interest, no end to the litigation appears in sight. Mr. Stieren testified at the trial that he was disabled and unemployed but nevertheless borrowed $10,000 to pay Mr. Reid to continue the state court fight. Mr. DeLay filed documents with his request for extension of time listing numerous physical ailments from which he suffers and identifying the many prescription medications he takes, but Attorney Reinbold's recently-filed fee disclosure says that Mr. DeLay borrowed $6000 from family and friends to pay her to prosecute his appeal. These facts alone strongly suggest that no arms-length, third-party buyer is going to come forward to buy what Ms. Pogge has for sale. Buying Mr. DeLay's interest in RKR Clubs is buying into expensive litigation; no one not already caught up in the litigation could reasonably be expected to purchase Mr. DeLay's interst in RKR

---

[6] Although the state court ruled in favor of Mr. DeLay and Mr. Stieren, they rejected Mr. Bandy's tender of their interests, and Mr. Bandy has therefore remained in control of the day-to-day operations of the bar. Whether their refusal of the tender constituted a waiver of any rights is an issue not yet addressed by any court. And, in any event, the judgment in favor of Mr. DeLay was held to be void by this Court.

Clubs.

If the only potential buyers of Mr. DeLay's interest in RKR Clubs are the three original owners, then that fact also suggests that the sale cannot be reasonably expected to yield a surplus. Mr. Bandy has no incentive to offer more money for his purchase. His offer of $15,000 is already a better offer than Mr. DeLay's $15,000 offer because a condition of Mr. Bandy's purchase is that he agrees to subordinate his claim to all other claims and expenses of the estate. All timely filed claims and administrative expenses will be paid in full if Mr. Bandy proceeds with his purchase for $15,000. If Mr. DeLay was the buyer for $15,000, Mr. Bandy's claim would not be subordinated and creditors would be paid less than 100%.  There is no likelihood that under the current posture of the case, Mr. Bandy will voluntarily increase his bid to an amount sufficient to create a surplus estate for Mr. DeLay's benefit.

Mr. DeLay said in his motion for stay that Mr. Stieren should have been given an opportunity to bid. But Mr. Stieren has never expressed any interest in bidding and has never offered a bid to Ms. Pogge. Thus, he has no standing to object to the sale or to appeal the Order directing the sale to go forward. *In re New Energy Corp.*, 739 F.3d 1077, 1079 (7th Cir. 2014). And, because he is disabled and unemployed, there is no likelihood that he will step up and bid an amount for the estate assets sufficient to create a surplus.

Mr. DeLay is the person with the most incentive to increase the bidding for the assets of his estate. But when initially given an opportunity to bid, he offered $15,000, an amount he knew would not be enough to pay all creditors because Mr. Bandy had just learned of the case and had yet to file a claim. Thus, his

-17-

insistence now that Ms. Pogge must do better is disingenuous, at best. But more importantly, this Court gave Mr. DeLay an opportunity, explained in more detail below, to provide an assurance that if the District Court were to order a change in the sale procedures, he would start the new bidding at an amount that would result in a surplus estate. Mr. DeLay was unable to provide that assurance. And if he cannot do it, then there is no one else left who can or will do it.

One final factor to be considered in whether the assets of the estate could reasonably be sold for an amount sufficient to yield a surplus is the fact that Mr. Bandy now owns the real estate that is occupied by the bar as a tenant. The undisputed testimony at trial was that when RKR Clubs began operations, the premises occupied by the bar was rented from an unrelated third party. Subsequently, Mr. Bandy purchased the property, using his own funds for a down payment and obtaining a mortgage to finance the balance of his purchase. Although Mr. DeLay and Mr. Stieren appeared to be annoyed about the purchase during the trial testimony, it seems that is all they have—annoyance, rather than some viable cause of action against Mr. Bandy regarding the purchase.[7] But, regardless, under the current circumstances, Mr. Bandy can raise the rent or issue a notice to quit the premises at the end of the current term of the lease.

---

[7] RKR Clubs was not in the business of owning real estate, and the poor financial conditions of Mr. DeLay and Mr. Stieren throughout the relevant time period suggests that Mr. Bandy did not usurp a business opportunity that he had some duty to share when he purchased the property. And, even if Mr. DeLay and Mr. Stieren could make that case, it would only be through further expensive and contentious litigation that they can ill-afford. Further, even if they prevailed, it is unclear what they would gain. A sale of the building could yield little, if any, equity available for distribution after the costs of sale and mortgage are paid and might well result in new ownership by a landlord who wants the building for its own purposes and, accordingly, raises the rent or serves a notice to quit.

Thus, the business is in a precarious position, making it, again, highly unlikely that a third-party buyer will step up or that Mr. DeLay could obtain financing to increase his offer to purchase to an amount sufficient to create a surplus estate.

Mr. DeLay has little likelihood of success on the merits on his contention that there is a reasonable prospect of a surplus estate here. Further, his very standing to appeal the Order directing a sale of estate assets is questionable because of the lack of any facts supporting his argument about a surplus estate.

The remaining factors to be considered in determining whether to grant a stay also do not weigh in Mr. DeLay's favor. Mr. DeLay is correct that, if the sale of his interest in RKR Clubs to Mr. Bandy is completed, his appeal will be moot. *In re River West Plaza-Chicago, LLC*, 664 F.3d 668, 671 (7th Cir. 2011). If his appeal is moot, he claims he will suffer irreparable harm that cannot be compensated with money damages. Although such a claim can frequently be sustained, that is not the case here. Mr. DeLay and Mr. Stieren have clearly indicated a preference for receiving money rather than the actual, operating business; they rejected Mr. Bandy's tender of the business when the state court ruled in their favor. And the whole point of Mr. DeLay's appeal appears to be that he wants Ms. Pogge to get more money for his interest in RKR Clubs so some of the money will be distributed to him. He makes no claim that his interest in RKR Clubs cannot or should not be sold. Further, and perhaps most importantly, the sale has already been delayed for years because of Mr. DeLay's dishonesty. If he had given Mr. Bandy proper notice when the case was first filed, it is highly likely that the assets would have been sold years ago—maybe to Mr. Bandy or maybe to Mr. DeLay—but sold nonetheless. Mr. DeLay failed to give notice of his

bankruptcy to Mr. Bandy and failed to notify Ms. Pogge of Mr. Bandy's pending settlement offer at the time; he stalled the sale for years. He has had more than enough time to litigate, and any injury he suffers at this point is, at least in part, self-inflicted.

Mr. DeLay also has not considered the interests of other parties, including his creditors, in requesting his stay. As set forth above, he has stalled the sale of his assets for years to the detriment of his creditors. Allowing the sale to Mr. Bandy now would result in those creditors who have filed claims being paid in full. Staying the sale puts those creditors off again. And Mr. DeLay's suggestion that his $15,000 held by Ms. Pogge is sufficient bond is simply inaccurate. A sale to Mr. DeLay for $15,000 would not result in full payment to creditors because Mr. Bandy would not be required to subordinate his claim. It cannot be disputed that Mr. DeLay's creditors would be harmed by the issuance of a stay pending appeal.

There is no direct public interest in the outcome of the appeals here, so that factor cannot play a significant role in determining whether to allow a stay. But there is, of course, general public interest in preserving the integrity of the bankruptcy court system, and Mr. DeLay's flagrant violations of his duties as a debtor cannot go without punishment. Perhaps the most compelling evidence at the trial was an email from Mr. DeLay to Mr. Reid dated September 3, 2014, several weeks after the bankruptcy was filed, wherein he affirmatively stated that Mr. Bandy did not need to know about the trustee's involvement and proposed that the net proceeds of any settlement go to Mr. Stieren and not to him, presumably to avoid having to pay anything to Ms. Pogge or his creditors. That type of conduct cannot be encouraged, and granting a stay without bond so that

Mr. DeLay can continue to pursue his own interests to the detriment of his creditors would send the wrong message.

Mr. DeLay has not established any basis for the granting of a stay pending appeal. Nevertheless, this Court suggested that it would issue a stay if Mr. DeLay could post bond of $35,000 to provide an assurance that if the District Court ordered that he be given an opportunity to bid a sufficient amount to create a surplus estate, he would do so.[8] Mr. DeLay has not posted the bond and has affirmatively stated that he cannot post the bond. His motion for stay pending appeal, as originally filed, must be denied.

Mr. DeLay's  inability to post bond and secure a stay should be the end of the story. But, as Attorney Reinbold points out, Mr. Bandy's filing of a cross-appeal changes the analysis. Mr. DeLay has asked to amend his original motion to include the allegation that Mr. Bandy's appeal stays the proceedings and enforcement of the March 29th Order without the necessity of posting bond. Mr. Bandy's response to the motion to amend set forth no grounds to deny the motion to amend, and the Court was prepared to address the issue of the effect of the cross-appeal on the stay issue even before the motion to amend was filed. The motion to amend will be granted.

Generally, a party cannot both accept the benefits of a judgment and appeal it at the same time. *See Wynfield Inns v. Edward Leroux Group, Inc.*, 896 F.2d 483,

---

[8] Attorney Reinbold and Mr. DeLay do not appear to question the Court's calculation of $35,000 as the approximate amount needed to assure a surplus estate. The number includes Mr. DeLay's exemption, the full payment of unsecured claims except for Mr. Bandy's claim, an estimate of $16,000 for Mr. Bandy's claim, and estimated trustee fees and expenses, including possible trustee attorney fees for participating in the appeals.

489 (11th Cir. 1990). And, when prevailing parties appeal from a judgment, "it would be against all reason and principle to permit them to proceed in the execution of it, pending the appeal." *Bronson v. LaCrosse & Milwaukee R.R. Co.*, 68 U.S. (1 Wall.) 405, 409-10, 17 L.Ed. 616 (1863). Exceptions apply, and the Seventh Circuit has held that a prevailing party's appeal "suspends enforcement of the judgment only when the theory of the appeal is inconsistent with enforcement in the interim." *BASF Corp. v. Old World Trading Co.*, 979 F.2d 615, 617 (7th Cir. 1992) (relying on *Enserch Corp. v. Shand Morahan & Co., Inc.*, 918 F.2d 462, 464 (5th Cir. 1990)).

Here, it is not clear exactly what Mr. Bandy is appealing. His notice of cross-appeal references the March 29th Opinion and Order and the denial of his motion to reconsider. Attorney Pappas suggested at the most recent hearing that Mr. Bandy was only appealing the denial of the motion to reconsider as it relates to the money award of compensatory damages. But that award was only part of the damages assessed for the stay violations by Mr. DeLay as alleged in Count I of the second amended complaint. It was accompanied by the sale order that provided additional compensation for the same violations. Ms. Pogge and Attorney Reinbold argue that the awards are not severable, and the Court agrees. The sale order and the monetary award comprised the total compensatory damages the Court determined were appropriate. An appeal of one part of that award is inconsistent with enforcement of the other part of the related award. Thus, Mr. Bandy cannot both enforce the sale provisions of the Order and appeal the monetary award of compensatory damages. The entire Order is therefore stayed by his cross-appeal. No bond related to the stay will be required from either party.

### IV. Conclusion

Mr. DeLay failed to establish any basis for the granting of a stay pending appeal and has acknowledged that he is unable to post bond to otherwise secure a stay. Nonetheless, Mr. Bandy filed a notice of cross-appeal that does not identify the specific provisions of the Opinion and Order from which he is appealing. He suggests that he is appealing only the award of compensatory monetary damages, but that part of the judgment entered in his favor is not severable from the rest of the compensatory damage award that includes the sale order. Accordingly, enforcement of the Order must be stayed in its entirety and no bond will be required to be posted by either party.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###